

25CV0809

# IN THE UNITED STATES DISTRUCT COURT OF MARYLAND,

## SOUTHERN DIVISION

USDC - GREENBELT
'25 MAR 12 PM 12:18

**PLAINTIFF:**

**Rita Amoh**

**HD**

Rcv'd by: _____

V

**DEFENDANTS:**

**Office for Civil Rights, United States Department of Education (ED)**
400 Maryland Avenue SW
Washington, D.C. 20202
Phone: 1-800-421-3481 or 202-453-6100
E-mail: ocr@ed.gov

**University of Maryland Global Campus**
Office of Legal Affairs
3501 University Blvd East
Adelphi, MD, 20783-80105.
Phone: 800-888-8682, ext. 17080
Email: legal-affairs@umgc.edu

## COMPLAINT:

**Discrimination, Negligence, Fraudulent Concealment, and Continuing Violations**

A. **1. Background**

   a. I, plaintiff Rita Amoh, submitted a Title IX complaint to the Office of Civil Rights (OCR) on 1/23/2024 with OCR Reference number 03-24-2118 (A. 1.a). The recipient for this complaint was the University of Maryland Global Campus (UMGC).

   b. I received an automatic electronic submission confirmation for this complaint, but I did not hear back from the OCR for more than a month. So, I mailed a copy of this complaint to the OCR Washington DC office on 3/5/2024 by USPS (A.1. b).

1

c. On 3/15/2024, I received an email from OCR DC that my case was transferred to OCR Philadelphia (A. 1. c).

d. I continued to follow up by phone calls and emails to ensure that my correspondence with the OCR was not hacked online (A. 1.d).

e. Feeling overwhelmed with frustration by the same recipient on other issues, I resubmitted another complaint to the OCR on 3/29/2024, but I am not sure if it was for the same Title IX complaint or for other discrimination issue I was experiencing at the time.

f. Then on 4/1/2024, I received an email from Ms. Andrea Delmonte, Esq., confirming receipt of my 3/25/2024 voicemail to their office; that she had responded by email on 3/25/2024; that she was assigned my case manager; that she was working on evaluating my case as of 4/1/2023; and that she had added any additional complaint submitted on 3/29/2024 to my original complaint.

g. Unfortunately, I did not see Ms. Delmonte's 3/25/2024 email (A. 1.g.) until she mentioned it on 1/4/2024 (*Id.* A. 1.f), because it went into my junk folder, which leaves so much to be desired, given that I had previously received other emails from the OCR in my inbox.

h. At this point, I was very skeptical about submitting any other case via the OCR portal, so on 5/5/2024, I submitted another discrimination complaint based on age and retaliation by UMGC to the OCR via my email to ocr@ed.gov. The OCR assigned docket no. 03-24-2237 and Ms. Linda Thomas as case manager to it (A. 1.h).

i. Per the introduction of the Case Processing Manual (CPM), "The mission of the

Office for Civil Rights (OCR) is to ensure equal access to education and to promote educational excellence throughout the nation through the vigorous enforcement of civil rights. The Case Processing Manual (CPM) provides OCR with the procedures to **investigate and resolve complaints, compliance reviews, and directed investigations to ensure compliance with the civil rights laws OCR enforces (Ex. F, p. 2) promptly and effectively**." But the OCR has largely been negligent and discriminatory about my complaints, pretending to be investigating but doing nothing while I continue to suffer as a result.

2. **OCR'S DISCRIMINATION and NEGLIGENCE**

    **Article I: Evaluation - Missing Complaint Processing Procedures (CPP) and Complaint Processing Manual (CPM)**

    "When OCR determines that written information provided to the U.S. Department of Education (Department) is a complaint, OCR will establish whether it has sufficient information to proceed to investigation. OCR will provide complainants with assistance regarding the nature of their rights and of the OCR investigation process" (CPM, p. 5).

    a. But for both docket numbers 03-24-2118 and 03-24-2237, both case managers never provided me the CPM or CPP until I asked for them (A. 2. a. i-iv). It is a deliberate failure of duty and discrimination by the OCR to not adhere to the OCR rules and to prevent me from knowing my rights as a complainant.

    b. Also, on 5/7/2024, OCR's complaint processing procedures (CPP) was supposed to be attached to Ms. Havilland's (Ms. Thomas's supervisor) email for docket

3

number 03-24-2237, but the email came without it. After asking for this attachment, Ms. Havilland sent me a copy of the CPP without the link to the CPM (*Id.* A. 2. a. iv), but the CPP and CPM are completely different documents which are both necessary for any party to a complaint.

c. Now, I realize that my email requesting for the missing document (*Id.* A. 2. a. iv) is also deleted from my exchange with Ms. Haviland on 5/14/2024 (*Id.* A. 2. a. iii). Why should this happen? Was it deliberately deleted or a man-in-the-middle attack?

d. I do not take these errors for granted as they are indicators of compromise.

e. Hence, it is questionable not to have received an initial letter from Ms. Delmonte for docket no. 03-24-2118 similarly formatted as that in docket no. 03-24-2237. I.e., it should have contained the CPP and at least the link to the CPM without my having to ask for guidance.

f. Therefore, leaving me the complainant to figure things out and navigate procedures and expectations by myself does not depict OCR's willingness to assist me. It is discriminatory as it defies the CPM rules.

g. **Late Evaluation on Docket No. 03-24-2118** - According to the CPM Section 103, "OCR will promptly acknowledge receipt of the correspondence. The complainant will be informed that the correspondence will be evaluated to determine whether OCR has authority to investigate the allegations and that further communications about the complaint will be forthcoming. Consent Forms, Complaint Forms, and OCR Complaint Processing Procedures are available at: (https://www2.ed.gov/about/offices/list/ocr/complaintform.pdf). (CPM, p. 7).

4

h. After submitting my Title IX complaint (docket number 03-24-2118) on 1/23/2024, I only received the automated receipt for submission (*Id.* A. 1.a. p. 2), but the OCR did not promptly inform me that the correspondence will be evaluated to determine whether they had the authority to investigate the allegations, and that further communications about the complaint will be forthcoming. I.e., after 1/23/2024, the OCR only responded to me about evaluation on 3/25/2024, which was 60 days past my complaint (*Id.* A. 1. d). And as of 8/21/2024, Ms. Delmonte continued to claim that my case was still in evaluation (A. 2. h). This was not a prompt response to my complaint but an act of malice with a willful intent to delay proceedings and hence justice.

3. **Other Discrimination on DOCKET No. 03-24-2237**

    a. **Section 107 - Waiver: Denial of Access to the Password Cracking Tool:**

        i. For docket no. 03-24-2237, I complained among other things, that in late 2021, UMGC denied me access to a password cracking tool as part of an access management lab on CBR 600.

        ii. I requested a waiver for any statute of limitation on this complaint on 6/12/2024, at the time of which I was still in talks with the university to give me access to this lab (A. 3. a. ii). I provided evidence of these conversations to the OCR.

        iii. <u>I explained in this request that while I needed time and space to concentrate on my schoolwork, I thought it was not wise to enter into litigation with the university, since it could jeopardize my piece of mind and hence my output</u>.

        iv. As a huge part of my second complaint, the password cracking tool was a

5

lab (education program) that I paid for with student loans, and I still lack the experience thereof.

v. But the OCR never responded to this request or gave me any reason to deny the waiver till they dismissed the case on 7/10/2024 based on subject matter jurisdiction (A. 3. a. v).

vi. I discussed this and other issues by phone with Ms. Thomas on 6/5/2024, and she only advised me to send all the evidence supporting my claims to Ms. Delmonte, which I did and have continued to do since (A. 3. a. vi).

vii. Section 108 – Dismissal (CPM, p. 10) states that "Before dismissing an allegation(s) under subsection 108(d), OCR will contact the complainant to provide appropriate assistance by explaining by phone, letter, or e-mail the information necessary for OCR to open an investigation of the allegation(s), ask the complainant to provide this information to OCR within 20 calendar days of the date of the request, and advise the complainant that OCR will dismiss the allegation(s) if the information is not received by that date. OCR will dismiss the allegation(s) if the requested information is not received within 20 calendar days of the date of the request.

viii. But when I spoke with Ms. Thomas on 6/5/2024, she never requested or gave me any deadline for any evidence related to this complaint which is different from the Title IX case with Ms. Delmonte.

ix. Also, under Section 504, the OCR has authority to investigate allegations that involve individuals who allege discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as

Employment allegations based on disability." (CPM (F), p. 8).

    x. The CBR 600 password cracking tool (*Id*. A. 3. a. ii) is an education activity which UMGC should not have taken away from me at the time they did, therefore I do not see how this claim has no jurisdiction at the OCR. That is negligence and discrimination.

    xi. But after following up on the dismissal of docket number 03242237, Ms. Delmonte asserted on 7/11/2024 that based on the information I submitting to her office on docket number 0324-2237, dismissal was appropriate, and that her team <u>will not be addressing the allegations under docket number 03242237</u> (A. 3.a. xi).

    xii. Therefore, to ask for information by phone and advise me by phone to forward my complaint to another case manager and dismiss the complaint based on subject matter jurisdiction, without responding to my waiver request, or request for additional information to clarify the request was a waste of my time, discriminatory, negligence, and a failure of duty by the OCR to follow through the CPM instructions, and hence their inability to resolve this matter promptly and effectively. This is negligence and discrimination.

4. **Other Discrimination on Docket No. 03-24-2118**

    a. **SECTION 109 Opening Allegation(S) For Investigation** - When OCR opens an allegation(s) for investigation, it will issue letters of notification to the complainant and the recipient that contain the following information:

- OCR's jurisdiction with applicable statutory and regulatory citations.
- The allegation(s) OCR will investigate.

7

- A statement that OCR is a neutral factfinder.
- Information about OCR's mediation process.
- Contact information for the OCR staff person who will serve as the complainant's and the recipient's primary contact during the investigation and resolution of the allegation(s).
- A copy of "OCR Complaint Processing Procedures" will be included with the letter to the recipient.

b. Docket number 03-24-2118 was originally submitted as a Title IX case, but subsequently, I added other complaints to it, including my age discrimination case, as advised by Ms. Thomas.

c. Article VII: Administrative remedies are exhausted when either of the following has occurred: (1) 180 calendar days have elapsed since the filing of a complaint with OCR and OCR has made no finding, or (2) OCR issues a finding in favor of the recipient. If OCR fails to make a finding within 180 calendar days or issues a finding in favor of the recipient, OCR will promptly notify the complainant of this fact and of their right to bring a civil action for injunctive relief…"

d. **Investigation Past Administrative Remedies**: After dismissing Docket number 03242237, the OCR continued to collect information from me, and they finally sent me an email on 9/30/2024 that they were opening my Title IX case (docket number 03-24-2118) for investigation (A. 4.d). However, this was 242 days past the complaint submission date. I.e., more than 180 days old, at which point administrative remedies had already been exhausted.

e. **Mediation**: The CPM states that "Complainants may request mediation at the

8

time of filing of the complaint (*Id.* F, p. 13). For both dockets, I opted for mediation on the complaint forms, but the OCR has not notified me of any discussion with the recipient about mediation.

f. Instead, as of 4/19/2024, they insist that my case is still in investigation after administrative remedies have already been exhausted (A. 4. f). That is discrimination and negligence to the CPM rules.

g. **Investigation of the Complaint – Fraudulent Concealment -** In this letter (*Id.* 4. d), the OCR also mentions that they would be <u>collecting and analysing relevant evidence from the complainant, University, and other sources as appropriate</u>. Also, the Complaint Processing Procedures (CPP) (G, p.2) states that OCR may use a variety of fact-finding techniques in its investigation of a complaint. These techniques may include reviewing documentary evidence submitted by both parties, conducting interviews of the complainant, recipient's personnel, and other witnesses, and/or site visits.

    i. At time of issuing their letter of investigation on 9/30/2024, the OCR had already collected information and evidence from me via phone call for docket number 03242237, and two sets of questions and email communication for docket number 03-24-2118 (Ex. B; C; D).

    ii. Ironically, the OCR has never reached back out to me after 9/30/2024 to collect any more information, or relay information from the recipient to me, or tried to present any resolution of any kind.

    iii. As of 12/19/2024, Ms. Demonte still claims that she is still investigating the case (*Id.* A. 4. f) without any further communication with me since she

opened the case for investigation on 9/30/2024. Insisting investigation without any communication past administrative remedies is not consistent with the **prompt and effective** procedures required by the CPM to investigate and resolve a complaint.

 iv. There is really nothing more to investigate at this point, while I continue to suffer anomalies and challenges on several online accounts which have resulted in job and financial losses **and** a great deal of time wasting.

 v. Also, the OCR (Ms. Delmonte and Ms. Cavallucci) did not acknowledge my last communication to them on 10/22/2024 (*Id.* D. f. 4), but that communication contained essential information about privacy breach and infringement which required immediate attention such as a letter of findings and resolution (CMP, p. 19).

5. **DISMISSAL**

    a. According to the CPM (Ex. F, p. 10), "OCR will dismiss an allegation(s) for the following reasons:

    (a) OCR lacks jurisdiction over the subject matter of the allegation(s). – <u>All the allegations stated in Ex. A. 3 for docket no. 03-24-2237 have OCR subject matter jurisdiction.</u>

    (b) OCR lacks jurisdiction over the entity alleged to have discriminated. – <u>In the dismissal letter, the OCR stated that they have jurisdiction over UMGC.</u>
    "When appropriate, OCR will refer the allegation(s) to the agency with jurisdiction." –

    (c) The allegation(s) was not timely filed, and a waiver was not requested or was requested but not granted pursuant to section 107. – <u>I request a waiver which was</u>

10

<u>not responded to before the case was dismissed (*Id.* A. 3.a). There is no reason to have denied that waiver request.</u>

(d) The allegation(s) lacks sufficient detail (i.e., who, what, where, when, or how) for OCR to infer that discrimination or retaliation may have occurred or is occurring. – <u>Per my telephone conversation with Ms. Thomas, she advised me to forward all evidence for this docket to Ms. Delmonte. I did exactly that and have continued to provide new and emerging evidence to Ms. Delmonte to date, but the OCR has not mentioned that my complaint lacks sufficient detail.</u>

(e) A signed consent form is required to proceed with an investigation and the consent form has not been provided." – <u>I submitted signed consent forms for both dockets on at the time of filing (*Id.* A. 1.a; 1.h).</u>

(f) The allegation(s), on its face or as clarified, fails to state a violation of one of the laws or regulations that OCR enforces.

b. I told Ms. Thomas over the phone that UMGC discriminated against my civil rights by:

   i. **Password Cracking Tool**: Taking the password cracking tool away from me unduly (*Id.* A. 3.a; Ex. B, 11. e).

   ii. **Breach of Privacy to Age and Student ID at Career Quest** – On 7/11/2024, Ms. Delmonte told me not to submit any more UMGC's Fair Practices filings to her office, as she did not find it necessary (A. 5. ii). However, I forwarded my privacy complaint together with other issues to the OCR on 10/22/2024, but they did not respond to it (*Id.* E. 6).

   iii. **Breach of Privacy to my Age and Student ID** - My age and student were

11

not supposed to be visible on my Career Quest account, but since they were visible to me, peers and other third parties could also see them (*Id*. E. 1.b – 1.d). Exposing my age and student ID to prospective employers and other third parties encourage age bias, which ultimately opposes the Age Discrimination act of 1975, a law that the OCR enforces.

iv. **Breach of Privacy to my Career Quest Account:** Automatic login to my UMGC Career Quest account resulting in breach of privacy (*Id*. E. 6. a). But the UMGC IT department never fixed it (*Id*. E. 6. e. i-iv). Each time I reported anything Career Quest related to Career Services, they never responded to me. Instead, they would talk to Fair Practices and expected Fair Practices to talk to me. But Fair Practices does not resolve the technical issues in question. They only try to resolve the fairness of how the issue was handled. That is why it is discriminatory for Fair Practices to tell me they do not see any discrimination in my complaints while Career Services refuses to talk and resolve any Career Quest related issue. Lack of privacy to any of my online accounts is lack of privacy to my entire device and hence other accounts, which has ultimately resulted in my inability to find jobs, including USA Jobs.

v. **VFairs**: Blocking my access to the UMGC March 2024 job fair through VFairs (*Id*. Ex. B. 11.a – 11.b). UMGC never notified me of a break in access to the job fair affecting all or some participants, therefore, it was an isolated incident affecting me alone, but Career Services and the Fair Practices office has never said or done anything about this incident. VFairs has continued to create problems for me after this incident, and both UMGC and the OCR are

looking on unconcerned.

vi. **Erroneous Notifications** - Sending me erroneous notifications that contradict my status as a UMGC alum. These notifications falsely identified me as anything but a Cybersecurity Management and Policy alum, which may result in prospective employers receiving wrong descriptions of my status at the university. I submitted this information to the OCR on 7/27/2024 (Ex. B, 11.c), but the OCR does not find subject matter jurisdiction with it. Yet, I have continued to endure this problem, which is still unresolved, as it occurred again in September 2024 (*Id.* D. 3. e).

vii. **The Possibility of Retaliation due to the Title IX case** either by the respondent or by the school, resulted in or complicated privacy loss and other digital attacks.

viii. **The Possibility of Retaliation by the VFairs employees** because I reported them to the Cybersecurity Department and Career Services for restricting my Student ID and hence my VFairs account, which eventually resulted in the blockage of my access to the March 2024 job fair.

ix. Even though Ms. Delmonte advised me on 7/1/2024 that she would not need any more complaints related to UMGC Fair Practices (*Id.* A. 5. ii), I have continued to send her all the material related to all of my UMGC's continuous discrimination, negligence, and violations which I believe are due to retaliation from reporting my Title IX, age, and other related issues to the OCR.

6. **Invasion of Privacy on Microsoft Copilot via UMGC**

   Subsequently, I have also experienced invasion of privacy as follows:

13

a. Copilot is an open-source application, I can only use Copilot by signing into my UMGC Microsoft account (*Id.* D. 4.b).

b. I have tried to resolve this issue with the UMGC IT services (*Id.* D. 4. c), but they never resolved it.

c. I also tried to use Geek Squad on 10/18/2024 (*Id.* D. 4. e). They resolved it, only for the problem to reappear later. Microsoft resolved it shortly after, and hopefully, it does not happen again.

d. The last time I checked on 1/18/2024, this privacy issue was still persistent, meaning that it is on and of (*Id.* D. 4. g).

e. There is no reason for this happen, unless UMGC is monitoring my activities on my device, and it is an invasion of my privacy.

f. I reported this problem to the UMGC resolution management on

g. I also reported the same to the OCR on 10/22/2024 (6.g), but the OCR has also taken no action on it either. Again, lack of privacy to my research activities is lack of privacy to my device and hence all other activities.

h. Per Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., 34 C.F.R. Part 100. Under Title VI, OCR has authority to investigate allegations that involve discrimination in a recipient's education program or activity, including applicants, students, and parents, as well as certain employment complaints, based on race, color, or national origin. With respect to employment, OCR has authority if: (1) the alleged discrimination could adversely affect program beneficiaries.

i. Therefore, the OCR has authority investigate all the above listed issues, or at least some, as they all involve unequal access to educational materials and jobs,

as well as age and retaliation discrimination, but the OCR unduly dismissed docket number 03-24-2237 without using the CPM, even though their dismissal letter kept referencing the CPM.

7. **UMGC's Negligence - Failure to Dismiss Plaintiff's Title IX allegations:**

    a. According to the Title IX Investigative and Adjudicative process 1. VI, UMGC may dismiss a formal complaint for several reasons, but to date, the Title IX office has failed to dismiss my Title IX allegations, even though he is supposed to draw a conclusion or dismiss it before or after an investigation.

    b. The appeal decision (Id. B. 3. F. ii) from the university was also delivered to me in word document format, so that any recipient to this communication could edit it, including the hackers with whom I am dealing. Therefore, I forwarded the whole email to Ms. Delmonte as is without saving the attachment to a pdf file before, just in order to preserve the condition in which it was delivered to me (7. b. i-iii). Who submits a judgment in an editable format?

    c. I also asked the Title IX Coordinator why the University's appeal decision did not have a signature on it. He did not respond. Instead, Ms. Ashley C. Smith responded that a signature was not required on the university's assessment and decision on my appeal (7. c).

    d. Meanwhile, Jayme Smith is listed on top of this document (*Id*. B. 3. f. ii). as the appeals hearing officer, and I have no response from the recipient. Why wouldn't Ms. Jayme Smith append her signature to her assessment and decision for the case?

    e. It is the duty of the Title IX coordinator to make a conclusion or dismiss a case,

but this did not happen for me. It is discrimination and negligence.

    f. The appeal decision also did not show that the respondent received a copy of it (*Id.* 6. j. para. 4). But according to the Title IX Investigative and Adjudicative process (para. 1. VI. C), "both Complainant and Respondent will be notified in writing if the Title IX Coordinator dismisses a formal complaint for any of the above reason(s)," or both parties to the complaint are supposed to receive copies of all correspondence thereof. That is discrimination and negligence.

    g. After forwarding UMGC'S appeal decision to Ms. Delmonte, it is nowhere to be found in my emails or in my pdf files. i.e., the copy from the Title IX end on 4/11/2024 (*Id.* 7. b. i) and that from me to the OCR on 4/12/2024 (*Id.* 7. b. ii) are both missing. The only copy I have right now is the printed version which I forwarded to Ms. Delmonte in her first set of questions on 6/9/2024 (*Id.* B. 3. f. ii). This is one reason I have privacy loss with Copilot and my Career Quest accounts, because many of my online activities are hacked.

    h. After all this, Ms. Delmonte is still investigating and does not see the need to conclude or dismiss the case.

    i. There are other UMGC communications that may not be in this complaint, particularly complainant's appeal to UMGC. I will submit those as needed in the course of the court's proceedings, as I am very time pressed at the moment trying to prepare myself for jobs at the same time.

## 8. CONCLUSION

    a. In short, the OCR is deliberately refusing to resolve and conclude this matter based on the evidence already collected from me and as required by the CPM and the CPP.

b. Instead, they are aiding and abetting UMGC in violating my civil rights.

c. Therefore, there is not going to be any conclusion for this case as long as the OCR is in charge.

d. Hence, the OCR must be held accountable for discrimination, negligence, fraudulent concealment, continuous violations which has caused tremendous waste of time and an intentional infliction of emotional distress.

9. **DAMAGES**

   a. Waste of my time – I have spent so much time trying to gather information for the OCR, and I have continued to do so in order to get justice for all the injustice I have endured from UMGC and the OCR. I could have used all this time to study for certifications to enhance my career.

   b. My CMP 640 grade is still unresolved. A better grade would go a long way to find me a job.

   c. I still lack the experience of the password cracking tool.

   d. I have lost potential job opportunities because:

      i. VFairs blocked my access to employers in March 2024.

      ii. My email notification for jobs were blocked from Career Quest (*Id.* C. 16. f).

      iii. Erroneous notifications could potentially prevent me from getting jobs (*Id.* B. 11.c).

   e. Negligence to privacy breaches and infringement have negatively affected most of my online activities. For example:

      i. I have received delayed or no response to USAJobs and the National

Security Agency job applications, as wells as other third-party agencies such as CACI International.

ii. If these privacy issues are resolved, I will continue to experience unemployment as retaliation to my complaints.

iii. Some email receipts from certain merchants such as Shein are blocked.

iv. My electricity bills are hacked, resulting in deletion of monthly statements and/or wrong billing statements.

v. Since the OCR has failed to use the evidence I have submitted to them so far to conclude that the recipient failed to comply with the law or not, while I continue to suffer great losses, it is an intentional infliction of emotion distress.

vi. Continuous violations

## 10. PUNITIVE DAMAGES

All claims listed above show that UMGC and the OCR have and are still engaging in acts of malice with willful intents to injure me, therefore, they are liable to punitive damages.

## 11. Summary of all Evidence Submitted by Complainant to the OCR

B. OCR First Set of Questions and Answers (1-12)

C. OCR Second Set of Questions – (13-16)

D. UMGC Fair Practices / Resolution Management Complaint

E. Additional Erroneous Notifications, VFairs, Copilot issues, including receipts for sending to UMGC Career Services and Resolution Management.

F. OCR Case Processing Manual (CPM) (Will be forwarded electronically)

G. Complaint Processing Procedures (CPP) (Will be forwarded electronically).

## Plaintiff's Prayer for Relief

Plaintiff therefore prays that the honorable court grants judgement as follows:

- Monetary damages to Plaintiff in the amount of $10,000,000.00 for all the damages listed above.
- Punitive damages of $10,000,000.00 for intentional infliction of emotional distress, as OCR and UMGC's behavior are pure acts of malice with willful intents to injure.
- That Plaintiff be given a review of her CMP 640 paper.
- That UMGC will stop infringing and breaching Plaintiff's privacy via Career Quest and Microsoft Copilot
- That the erroneous notifications will stop on her UMGC accounts
- That the Court grants all other relief that it deems just and proper.

Dated: 3/12/2025

Respectfully Submitted:

*rita amoh*

Rita Amoh

12807 Murphy Grove Terrace

Clarksburg MD 20871

Email: rita.amoh@outlook.com

Phone: 240-491-2843

19

## CERTIFICATE OF SERVICE

I, Rita Amoh, do hereby certify that on 3/12/2025, I personally submitted three copies of the foregoing **COMPLAINT** to the United States District Court of Maryland Southern Division at 6500 Cherrywood Lane, Greenbelt MD, 20770.

I will also forward a court-stamped copy each to the defendants at the UMGC Office of Legal Affairs, 3501 University Blvd East, Adelphi Maryland 20783-80105 and OCR United States Department of Education (ED) at 400 Maryland Avenue SW, Washington, D.C. 20202 respectively by USPS prepaid service.

I declare under penalty of perjury of the laws of the United States of America the foregoing to be true and correct.

*Rita Amoh*

Rita Amoh